IN RE JOSÉ PÉREZ RODRÍGUEZ, JUDGE OF THE DISTRICT COURT, RÍO PIEDRAS PART, Respondent.

No. FC-62-4.        Decided November 9, 1964.

---

Mr. Manuel Moreda, Superior Judge, acted as Special Master.

*Hiram R. Cancio, Secretary of Justice, José C. Aponte, Gerardo Méndez Correa,* and *Manuel López Carrillo, Special Prosecuting Attorneys at Large,* for petitioner. *Félix Ochoteco, Jr., Jorge Luis Córdova Díaz, William Fred Santiago,* and *Roberto Schmidt Monge* for respondent.

PER CURIAM: On September 5, 1962, after Mr. Chief Justice Negrón Fernández disqualified himself, Mr. Justice Belaval determined that there was prima facie cause for prosecuting respondent judge, José Pérez Rodríguez, for reprehensible conduct, and requested the Secretary of Justice to file the corresponding complaint, pursuant to the provisions of § 24 of the Judiciary Act, No. 11 of July 24, 1952 (Sp. Sess. Laws, p. 30), as amended by Act No. 31 of June 11, 1962 (Sess. Laws, p. 81).

The complaint having been filed and answered, the Court designated Mr. Manuel Moreda, Superior Judge, as Master to hear and receive whatever evidence the parties might wish to present and to certify the same to the Court together with his findings of fact. The hearing of the case having been held before the Master and the evidence re-

ceived, Mr. Manuel Moreda certified and accompanied the same by the following findings of fact:

### "FINDINGS OF FACT

"I. Respondent José Pérez Rodríguez is the Administrative Judge of the District Court of Puerto Rico, Río Piedras Part. On Friday afternoon, September 30, 1960 and after office hours, he stopped for a while together with some friends at a cafeteria located on the main floor of the building occupied by the District Court. From there he went to Bird's Restaurant in Hyde Park to seek other friends. He remained there for some time and then went home to take a bath. Again he went out to look for some friends whom, apparently, he had not been able to find and stopped at Cafetería San José. He imbibed intoxicating liquor during the time spent in the aforesaid businesses, but we conclude, as a matter of fact, that he was at no time in a drunken condition.

"II. The Cafetería San José is situated on state highway No. 1 across from the commercial center on the road leading from Río Piedras to Caguas. Among other dependencies, this cafeteria has a dance hall. On the evening of September 30, 1960, that hall had been rented to members of the social fraternity Alfa Eta Gama, who were holding a dance for the purpose of raising funds for the benefit of the fraternity. The fraternity members were in attendance at the main door and charged one dollar and twenty-five cents ($1.25) to every person wishing to enter the dancing room.

"III. Respondent, who for some time had been occupying a table with some friends outside the cafeteria, around eight in the evening walked over to the entrance of the dance hall. As he tried to enter he was stopped by fraternity members José Hernández Longchamps and Velázquez, who at the time were acting as doormen. They asked him for his admission ticket or to pay the fee of $1.25. Respondent refused to pay and also insisted that, owing to his position of District Judge of Puerto Rico, he had the right to enter without pay. While they argued on complainant's alleged right to enter the dance hall, the manager of the business, Feliciano Alicea, arrived. The respondent judge, who knew Alicea quite well, asked him to intervene and to explain to the members that he, the judge, had the right

to enter without pay. Alicea, however, sustained the members' right to charge, because it was a private activity. While the incident which we have just related was taking place, the persons involved were submitted to a strong emotional tension. Yet, the peace was not disturbed nor was any profane or obscene language employed.

"IV. Upon realizing the uselessness of his efforts in trying to enter the dance hall, respondent called police headquarters on the telephone of the business and asked them to send a patrol. As a result of his call, state policemen Cristóbal Santiago and Dulcinio Ramírez appeared at the cafeteria. When they arrived the judge complained that they would not let him in. The policemen and the judge walked over to the entrance of the dance hall. There they spoke with the fraternity members who were acting as doormen and persuaded them to let the judge go in for a moment in their company. The request was granted after the agents agreed to stay in the room only for a moment and to leave in the company of the judge.

"V. Neither upon arrival of the police nor at any other moment was any offense committed either at the bar or in the dance hall. The judge had no good reasons either to suspect that the law was being violated in the dance hall. As a matter of fact, we conclude that his interest in entering was not based on the existence of such suspicion.

"VI. After leaving the dance hall the respondent verbally ordered the police to arrest manager Alicea. When the agents asked for information on the offense object of the arrest which they were required to carry out, the judge merely insisted on Alicea's arrest without telling the motives and without offering the information requested. In ordering the arrest, the judge had no reasonable basis to believe that Alicea had committed any offense.[1]

"VII. Confounded by the judge's conduct and the set of facts presented, the policemen called Lieutenant Modesto Rodríguez over the telephone for the purpose of asking him to help them solve their problem. When the officer arrived, the judge insisted on his order of arrest and did not explain to the lieu-

---

[1] Considering the manner in which complainant himself accounts for his conduct and that of Alicea, we have not given credit to that part of his testimony alleging that Alicea uttered insulting phrases at him.

tenant the reasons for his insistence. At that moment Alicea arrived with Mr. Acevedo, an attorney at law. Since the situation was becoming tense and fearing that serious complications might arise, the lieutenant decided to carry out respondent's order and to take Alicea to headquarters under arrest. The latter, upon advice of his attorney, Mr. Acevedo, did not offer resistance and accompanied the lieutenant.

"VIII. Mr. Acevedo stayed for a few minutes at the scene of the occurrence with the judge trying to convince him to desist from his attitude against Alicea. His efforts failed and both the judge and the attorney left in separate cars and went to Río Piedras police headquarters.

"IX. While at headquarters the lieutenant started to go up to the second floor of the building with respondent. Mr. Salvador Acevedo tried to accompany them, as a result of which an incident arose between the attorney and the judge. The incident arose as follows: Respondent said that some persons, among them Mr. Acevedo, wished to get rid of him as judge. When Acevedo protested, the judge called him 'pila de mierda.' In view of this insult, Acevedo accused him of driving a motor vehicle in a drunken condition. The lieutenant then intervened and asked Acevedo to leave, and the respondent and the police officer proceeded to the second floor of the building.

"X. While on the second floor, the officer spoke to respondent in connection with the offense with which he proposed to charge Alicea. The respondent informed him that he did not propose to accuse him of any offense and that he only wanted to take him to headquarters for the purpose of reprimanding him. The officer warned him not to do it, for he would not permit outrage of any kind at headquarters.

"XI. When respondent returned to the main floor of the building, he addressed Alicea saying "you are a son of . . .," and at that moment the lieutenant intervened and did not give him a chance to finish the phrase. Again he warned respondent that he would not permit any outrage upon any person at headquarters. In view of that attitude of the police officer, respondent ordered that Alicea be set free.

"XII. Judge José Pérez Rodríguez has discharged his duties as Administrative Judge of the District Court of Puerto Rico,

Río Piedras Part, to the satisfaction of his administrative supervisors."

■ We have considered the evidence in the record and, although the prosecution evidence is in itself somewhat conflicting and difficult to determine as to certain expressions and attitudes of respondent object of the Master's findings IX, X and XI, weighing the evidence as a whole in the light of all the facts and circumstances involved, the Court concludes that respondent Judge Pérez Rodríguez, on the occasion of the facts recited in the Master's findings, observed reprehensible conduct unbecoming a magistrate which merits disciplinary sanction pursuant to the provisions of § 24 of the Judiciary Act, No. 11 of July 24, 1952, as amended by Act No. 107 of July 8, 1960.

On that occasion Judge José Pérez Rodríguez, by his action, did not live up to the standards of conduct provided in Canon I of the Canons of Judicial Ethics in its postulate:

"The faith of the people in the administration of justice, as an essential value of democracy, should be preserved by the Courts at the highest level of public responsibility.

"In the performance of their high missions, those called upon to administer justice, aware of their position in society and of the importance of their missions, should make certain that their conduct is governed by such ethical standards as will do honor to their office and will foster respect and confidence in the Judiciary."

In view of that enunciation of what is and ought to be a desirable standard of judicial conduct, Judge José Pérez Rodríguez on the occasion of those facts was not sufficiently conscious of the office which as judge he holds in the community, which at all times and everywhere should be an image of exemplarity; he forgot his mission of judge and made no effort to control his actions at that moment and to act by a standard of conduct which would do honor to his ministry.

■ The high and honorable prerogative to order an arrest and to restrict the personal freedom of a citizen which The People has invested in the person of the judge, excluding any other public officer no matter how high his constitutional hierarchy, should never be used by the judge for any purpose other than to do the justice which he is called upon to administer. Respondent unduly used that prerogative, even though for the purpose of asserting what he thought, evidently mistakenly and erroneously, were his attributes as a judge, particularly since he invoked those attributes to satisfy a personal desire.

Judge José Pérez Rodríguez observed reprehensible conduct unbecoming a magistrate. Disciplinary sanction will be imposed censuring him for such reproachable conduct on the occasion of these facts.

Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages concur in the result and state that the sanction imposed should not have been confined to censuring respondent's conduct, but that his temporary suspension would have been proper as warranted by the seriousness of the acts found proved.

Mr. Chief Justice Negrón Fernández did not participate. Neither did Mr. Justice Pérez Pimentel nor Mr. Justice Belaval.